DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SANTANA EQUESTRIAN PRIVATE FINANCIAL, LLC,**
Appellant,

v.

**TIFFANY RICHTMYER,** d/b/a **APOLLO SPORT HORSES, LLC,
PAULO SERGIO MATEO SANTANA FILHO, BROCK CLERMONT,** and
**ALEXA WHITE,**
Appellees.

No. 4D21-3363

[September 14, 2022]

Appeal of a nonfinal order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Joseph Marx, Judge; L.T. Case No. 50-2021-CA-003328-XXXX-MB.

Christine R. Davis of Davis Appeals, PLLC, Tallahassee, for appellant.

Larry A. Zink of Zink, Zink & Zink Co., L.P.A., Hillsboro Beach, for appellee Tiffany Richtmyer, d/b/a Apollo 14 Sport Horses, LLC.

PER CURIAM.

Santana Equestrian Private Financial, LLC ("Santana Equestrian") appeals a nonfinal order determining the right to immediate possession of a competitive jumping horse, which horse Santana Equestrian contends it purchased in good faith and in the ordinary course of business.

Following a two-day bench trial, the trial court granted replevin and awarded the horse to appellee Tiffany Richtmyer. We reverse, agreeing with Santana Equestrian that this case is controlled by *Carlsen v. Rivera*, 382 So. 2d 825 (Fla. 4th DCA 1980), and section 672.403, Florida Statutes (2020) – a provision of Florida's Uniform Commercial Code (UCC).

The relevant provisions are as follows:

> **672.403 Power to transfer; good faith purchase of goods; "entrusting"**

(1) A purchaser of goods acquires all title which her or his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased.  A person with voidable title has power to transfer a good title to a good faith purchaser for value.  When goods have been delivered under a transaction of purchase the purchaser has such power even though:

(a) The transferor was deceived as to the identity of the purchaser, or

(b) The delivery was in exchange for a check which is later dishonored, or

(c) It was agreed that the transaction was to be a "cash sale," or

(d) The delivery was procured through fraud punishable as larcenous under the criminal law.

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

§ 672.403, Fla. Stat. (2020).

The UCC further provides:

"Buyer in ordinary course of business" means a person who, in ordinary course, buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, from a person, other than a pawnbroker, in the business of selling goods of that kind.  A person buys goods in ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which

2

the seller is engaged or with the seller's own usual or customary practices.

§ 671.201(9), Fla. Stat. (2020).

As explained in *Carlsen*, under the UCC, if goods are entrusted to a merchant who deals in goods of that kind and ultimately the goods are sold to a good faith buyer in the ordinary course of business, then the entruster's intent, intervening sales, and the merchant's fraudulent actions are irrelevant. 382 So. 2d at 826-27. "The buyer in the ordinary course of business obtains good title by virtue of [section 672.403(2)]." *Id.* at 827. "The purpose of this section of the Uniform Commercial Code is to protect the buyer in the ordinary course of business and thus to eliminate impediments to the free flow of commerce." *Id.* at 826.

There is no dispute that Richtmyer entrusted the horse to a known merchant, her former fiancé. He in turn either sold or entrusted the horse to another merchant in the sport jumping business with directions to sell the horse. A year and a half after the initial entrustment, the second merchant sold the horse to Paulo Santana, owner of Santana Equestrian.

The trial court's reasons for finding that Santana was not a good faith buyer in the ordinary course of business are not supported by the record.

The only expert at trial testified that this was a typical sale in the industry. Santana Equestrian bought the horse from an established company in the business of buying and selling jumping horses. Paulo Santana considered the horse's athletic ability and United States Equestrian Federation record. He viewed video of the horse's performance on jumps, and he relied on the experience and opinion of a trusted source, his godson, a professional rider who had ridden the horse daily for a few weeks. The equestrian expert testified the sales price and negotiations were also typical in the industry. She did not find the purchase price suspicious or see anything out of the ordinary in this sale.

The evidence established that the sale comported "with the usual or customary practices" in the business of selling jumping horses and that Santana was a good faith purchaser for value under the UCC.

Accordingly, we reverse the replevin judgment awarding possession to Richtmyer.

*Reversed.*

3

CIKLIN, KUNTZ and ARTAU, JJ., concur.

\* \* \*

*Not final until disposition of timely filed motion for rehearing.*